UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPLETE GENOMICS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ILLUMINA, INC., et al.,<br><br>Defendants. | Case No. 21-cv-00217-WHO<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: Dkt. No. 33 |

## INTRODUCTION

In this action, plaintiffs Complete Genomics, Inc. ("CGI"), BGI Americas Corp. ("BGI"), and MGI Americas, Inc. ("MGI"), (collectively "CGI"), assert antitrust claims against defendants Illumina, Inc. and Illumina Cambridge Ltd. (collectively "Illumina") arising out of patent infringement claims Illumina has brought against CGI in an earlier-filed action. Illumina moves to stay the present action pending resolution of the related infringement proceedings, arguing that CGI's antitrust claims are wholly derivative of issues pending in the infringement proceedings and that resolution of those claims is likely to narrow or moot the antitrust claims. CGI opposes the motion. Staying this action is likely to promote judicial economy, avoid unnecessary litigation costs, and is unlikely to cause meaningful harm to CGI. There is no need for oral argument; the hearing is VACATED and the motion is GRANTED. The action is STAYED pending resolution of the related infringement proceedings.

## BACKGROUND

In this antitrust action, CGI alleges that Illumina has improperly asserted three patents against it in the related action *Illumina v. BGI Genomics Co.*, No. 3:20-cv-01465-WHO (N.D. Cal., filed Feb. 27, 2020) ("Infringement Action") in an "unlawful, anticompetitive manner." *See*

Dkt. No. 1 ("Compl.").

CGI's first primary allegation of anticompetitive conduct is that two of the patents asserted in the Infringement Action, U.S. Patent No. 7,531,444 ("the '444 patent") and U.S. Patent No. 7,771,973 ("the '973 patent") are invalid and were improperly obtained by Illumina through a fraud on the Patent Office, often called a *Walker Process* fraud claim. *Id.* ¶ 1. These allegations rest on the same factual theory as an inequitable conduct defense that I recently granted CGI leave to add in the Infringement Action. The theory, as described in my Order granting leave to amend is as follows:

> When prosecuting the '444 patent, Illumina originally listed claims directed to a nucleotide or nucleoside modified to include an azidomethyl group bound to and blocking the 3'OH of the nucleotide or nucleoside. Dkt. No. 233 ("Mot.") at 1. The patent examiner rejected the claims based on a paper published by Zavgorodny in 1991 ("Zavgorodny 1991"), which disclosed a method for placing an azidomethyl group on the 3'OH of a nucleoside. Mot. at 1; Dkt. No. 233-5 ("Milowic Decl., Ex. 4"). Illumina subsequently amended some of the '444 patent claims to limit them to modified nucleotides and asserted that Zavgorodny 1991 does not teach or anticipate the claimed nucleotides. Dkt. No. 233-6 (Milowic Decl., Ex. 5"). Following this amendment, the patent examiner granted the '444 patent, including claims 1 and 3, directed to a modified nucleotide.
>
> In its proposed Corrected First Amended Answer ("CFAA"), BGI seeks to allege a new inequitable conduct affirmative defense based on its claim that during this patent prosecution process, Illumina intentionally withheld or failed to disclose a reference to a paper by Terez Kovacs and Laslo Otvos title Simple Synthesis of 5-Vinyl and 5-Ethynyl- 2' Deoxyuridine- 5'- Triphosphates, and published in Tetrahedron Letters, Vol. 29, pp 4525-4528, 1988 ("Kovacs"). See Dkt. No. 233-7 ("Kovacs"). BGI alleges that Kovacs discloses a methodology for converting nucleosides to nucleotides that is very similar to the method that two of the inventors of the '444 patent, Drs. Xiaohai Liu and XiaoLin Wu, were using to create modified nucleotides. Dkt. No. 233-1 ("CFAA") ¶ 337. It further alleges that a former Solexa employee named Sarah Lee, who worked in the same lab as Drs. Liu and Wu and who worked with them on converting nucleosides to nucleotides, made a hand notation that appears to reference the Kovacs publication in an April 2001 notebook entry. Id. ¶¶ 332-335. Although the handwritten note is hard to decipher, it appears to state "Tet. Let. 1998, 29, 4525." Dkt. No. 233 ("Mot.") at 2-3. The notation matches the publication information for the Kovacs paper, except that the date is 10 years off. See Kovacs at 1.
>
> BGI alleges that the Kovacs reference is material, both because it discloses the same methodology Liu and Wu used to convert nucleosides to nucleotides and also because it provides a motivation for a person of ordinary skill in the art ("POSITA") to convert nucleosides to nucleotides. CCFA ¶ 338. Specifically, Kovacs notes that certain "nucleoside analogues" have proven useful as antivirals against herpes simplex virus infections and that "[i]nvestigations of the mechanisms by which these nucleoside analogues interfere with the cellular metabolism [ ] require the chemical synthesis of phosphorylated derivatives." Kovacs at 4525. BGI asserts that "Kovacs teaches that converting nucleosides to

2

> nucleotides (a nucleoside with phosphates added) is necessary to study the mechanism that normally occurs in a cell, in a test tube instead." CCFA ¶ 340. It alleges that based on Kovacs, a POSITA would have been motivated to use the method Kovacs discloses for converting nucleosides to nucleotides, to convert the 3'OH blocked azidomethyl nucleoside in Zavgorodny into a nucleotide. Id. ¶ 341.

Infringement Action, Dkt. No. 263 at 2-3. In sum, CGI alleges that Illumina intentionally and fraudulently concealed the Kovacs reference during the prosecution of the '444 and related '973 patents and that, had it not concealed this reference, the patent examiner would not have permitted the relevant claims of those patents. Compl. ¶ 1-2.

CGI's second primary allegation of anticompetitive conduct is that Illumina's assertion of U.S. Patent No. 10,480,025 ("the '025 patent") against its CoolMPS technology in the Infringement Action is objectively and subjectively baseless and constitutes sham litigation because "it is objectively apparent to one of ordinary skill in the art that CoolMPS's antibody with a fluorescent molecule and the ['025 patent's] claimed detectable label attached to the base of a nucleotide via a cleavable linker are substantially different." *Id.* ¶ 4. CGI asserts that this allegedly sham litigation constitutes a *PRE/Handgards*-type antitrust violation. *Id.*

CGI alleges that as a result of Illumina's anticompetitive conduct, Illumina has improperly obtained a preliminary injunction in the Infringement Action that prohibits CGI from introducing its CoolMPS technology into the U.S. market. *Id.* ¶ 5. It alleges that this injunction, and Illumina's litigation against it, have "harmed not only Plaintiffs, but the consuming public, who has been forced to pay higher, monopolistic prices for sequencing systems and reagents." *Id.* Based on these allegations, CGI brings claims for monopolization and attempted monopolization under Section 2 of the Sherman Act, as well as unfair competition claims under California Business & Professions Code § 17200. *Id.* ¶¶ 197-255. CGI demands a jury trial on all of its claims and seeks, among other relief, a preliminary and permanent injunction "prohibiting Illumina from maintaining a preliminary injunction that prevents Plaintiffs from introducing the CoolMPS product in the United States," treble damages, and restitution. *Id.* ¶ 257.

CGI filed this antitrust action on January 11, 2021. *See* Compl. Illumina moved to stay the action pending final resolution of the Infringement Action, arguing that (1) CGI's claims are derivative of the issues already pending in the Infringement Action and are likely to be mooted or

significantly narrowed by resolution of the Infringement Action, making the likely expensive and burdensome discovery in this action wasteful; (2) the Infringement Action is much further along and nearing the end of discovery, while this case was just filed; and (3) a stay would not prejudice CGI because its claims are dependent on a favorable outcome in the Infringement Action. Dkt. No. 33 ("Mot.") at 2. CGI responded that (1) a stay would run contrary to the Seventh Amendment as it would result in CGI's inequitable conduct defense – an equitable claim – being determined before its legal *Walker Process* claim; (2) a stay would prejudice CGI and consumers by delaying trial in the antitrust action and permanent injunctive relief and resulting in the possible loss of evidence; and (3) Illumina would not be significantly harmed by having to engage in antitrust discovery in this action. Dkt. No. 34 ("Opp.") at 3-11.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). In assessing whether a stay is appropriate in a particular action courts generally consider the following factors: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## DISCUSSION

A stay of this action pending resolution of the Infringement Action is appropriate based on judicial economy, prejudice to Illumina and lack of prejudice to CGI. My reasoning follows.

**I.    JUDICIAL ECONOMY**

CGI's claims are derivative of issues already pending in the Infringement Action.

4

Resolution of that action is likely to substantially narrow, or entirely moot, this action. CGI does not dispute that its claims in this action are derivative or overlapping with issues already pending in the Infringement Action, but it argues that a stay is not appropriate because the *Walker Process* claim in this action must be litigated by a jury before the inequitable conduct defense pending in the Infringement Action is resolved. I agree with Illumina that a stay of this action would promote judicial economy and I disagree with CGI that its legal *Walker Process* claim must be litigated prior to resolution of its inequitable conduct defense in the Infringement Action. This factor weighs in favor of a stay.

CGI's claims are based on two basic theories: (1) Illumina fraudulently obtained the '444 and '973 patents; and (2) CGI's CoolMPS technology clearly does not infringe the '025 patent such that Illumina's assertion of infringement is a sham. *See* Compl. ¶¶ 1-5. These theories raise the same issues already pending in the Infringement Action. CGI's *Walker Process* fraud claim relies on the same basic facts and evidence as its inequitable conduct defense in the Infringement Action. And CGI's sham litigation theory regarding the '025 patent hinges on the same key issue underlying Illumina's infringement claim – whether the '025 patent is infringed by CoolMPS.

If these issues are resolved in Illumina's favor in the Infringement Action, CGI's antitrust claims would likely be mooted or unviable. A mixed resolution of these issues, or a decision in CGI's favor, could narrow or focus the remaining issues for the antitrust litigation.

Several courts have acknowledged that there may be judicial efficiencies in staying antitrust claims pending the resolution of related patent claims. *See Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) (staying antitrust claims and noting that resolution of patent issues might "dispose of the antitrust counterclaims altogether); *ASM Am., Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) ("It is common practice in federal court to stay antitrust counterclaims until after the trial" of related patent claims). Like these courts, I agree that resolving the Infringement Action first may save significant judicial and party resources by narrowing the relevant issues in this action or eliminating the pending antitrust claims entirely.

CGI asserts that a stay would be improper, arguing that the Seventh Amendment requires

that its legal *Walker Process* claim in the antitrust action be determined before its inequitable conduct defense in the Infringement Action. It cites a line of cases in which courts have held that where both legal and equitable claims arise out of the same facts in an action, the legal claims must be resolved before the equitable claims. *See Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 504 (1959) (holding that district court abused discretion by conducting bench trial on equitable claims that precluded a jury trial on certain legal claims); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) (holding that where legal and equitable claims are based on similar facts, "the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims"); *Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007) ("[T]he court's decision to try the [equitable] inventorship claim before a jury trial on the state law claim ran afoul of the Seventh Amendment, and thus was an abuse of discretion."); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828-29 (9th Cir. 2013) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.") (internal quotation marks omitted); *Cabinet Vision v. Cabinetware*, 129 F.3d. 595, 600-601 (Fed. Cir. 1997) (holding that the jury findings of fact constrained district court's equitable determination under Seventh Amendment). These cases all address circumstances where both equitable and legal claims were pending in the same action, which is a distinction from the circumstances here, where the claims are pending in separate actions filed a year apart.

While CGI acknowledges this distinction, it argues that the same principle should apply here. I disagree. The Supreme Court has held that the resolution of an equitable claim may have preclusive effect on a subsequent legal claim brought in a separate action and that such an outcome does not violate the Seventh Amendment. *See Parklane Hosiery v. Shore*, 439 U.S. 322, 337 (1979); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 150 (2015) ("As to the Seventh Amendment, for instance, the Court has already held that the right to a jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was entered by a juryless tribunal."). This precedent makes clear that a party does not have an absolute right under the

6

1    Seventh Amendment to have a legal claim determined by a jury prior to the resolution of an
2    equitable claim.
3            CGI primarily relies on a single case from the District of Massachusetts in which the court
4    held "a distinction between claims within one action and those in separate actions reflect[s] not a
5    rigid technical rule but rather a practical recognition that the existence of separate actions usually
6    results in a particular sequence in which the actions are resolved. . . . But where the two actions
7    are concurrently pending before one court, that principle has no application. Instead, *Beacon*
8    *Theatres* requires that the factfinder's function should, if reasonably possible, be performed by a
9    jury." *Abbott GMBH & Co., KG v. Centocor Ortho Biotech, Inc.*, 870 F. Supp. 2d 206, 226 (D.
10   Mass. 2012), *aff'd sub nom. AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759
11   F.3d 1285 (Fed. Cir. 2014). While *Abbott* supports the idea that, under certain circumstances,
12   where legal and equitable claims are pending in separate actions, the legal claims should be
13   decided first, it is also clearly distinguishable from the fact at hand.
14           In *Abbott*, while the legal and equitable claims were pending in separate actions, the
15   actions were filed only two weeks apart and had been consolidated for discovery purposes. *See*
16   *Abbot GMBH*, 870 F. Supp. 2d at 218. Here, the two actions were filed a year apart and the case
17   in which the equitable claim is pending is significantly more advanced than the just-filed antitrust
18   action. Fact discovery is over in the Infringement Action, dispositive motions are set to be heard
19   in July, and trial is set for November. In contrast, this case was only recently filed and a case
20   schedule has not yet been set.
21           Unlike in *Abbott*, it would not be "reasonably possible" to resolve the legal *Walker Process*
22   claim prior to, or at the same time as, the inequitable conduct defense in the Infringement Action.
23   Doing so would require delaying resolution of the Infringement Action by at least a year or more
24   while the parties conduct antitrust discovery and complete other pretrial litigation in this action.
25   The law does not require such an inefficient or absurd result. Accordingly, I conclude that
26   resolving the inequitable conduct defense in the Infringement Action prior to a jury trial on CGI's
27   *Walker Process* claim is permissible and would not violate CGI's Seventh Amendment rights.
28           CGI also argues that its *Walker Process* claim is strong and that this weighs in favor of

1  denying the stay.  Opp. at 6-8.   It points to two cases that it claims demonstrate that "[w]here a

2  *Walker Process* claim is plausibly alleged, courts often deny motions to stay."  Opp. at 6.  But

3  neither case offers strong support of this assertion.

4          In *Netflix, Inc. v. Blockbuster, Inc.*, No. C 06-02361 WHA, 2006 WL 2458717, at *4 (N.D.

5  Cal. Aug. 22, 2006), the court denied a motion to stay and allowed *Walker Process* and patent

6  claims to proceed together, explaining "[i]t will be more efficient in this action to conduct

7  discovery and pretrial proceedings together."  There, unlike here, the court concluded there were

8  efficiencies to be gained by litigating the claims at the same time.  And in *Intel Corp. v. Via Techs,*

9  *Inc.*, No. C 99-03062, 2001 WL 777085, at *3, *7 (N.D. Cal. Mar. 20, 2001), the court allowed

10 *Walker Process* claims to proceed at the same time as unrelated patent infringement claims.  But

11 given the lack of overlap between the relevant claims, there were no plausible efficiencies to be

12 gained by staying the *Walker Process* claims.  *See id.*

13         In both of those cases, the court's decisions are focused on the most efficient way to move

14 the litigation forward, not on any specific determination as to the strength of the *Walker Process*

15 claims.  As discussed above, in this case a stay is the most efficient way to move the whole

16 litigation forward.  The Infringement Action is considerably more advanced, there are no

17 discovery efficiencies to be gained by moving forward in tandem, and resolution of the

18 Infringement Action may substantially narrow or moot the claims in this action.  Accordingly,

19 while I concluded that CGI had adequately alleged its inequitable conduct defense in the

20 Infringement Action under the relevant pleading standard, this does not justify denying a stay

21 given the significant efficiencies that a stay may create.

22         For these reasons, judicial economy weighs in favor of granting the requested stay.

23 **II.    PREJUDICE TO ILLUMINA IF CASE PROCEEDS**

24         Illumina argues that absent a stay it would be prejudiced by being required to engage in

25 expensive antitrust discovery that may prove entirely unnecessary once the Infringement Action is

26 resolved.  Mot. at 10-11.  CGI responds that being required to defend a suit "does not constitute a

27 'clear case of hardship or inequity'" and that having to participate in antitrust discovery will cause

28 only minor harm to Illumina.  Opp. at 10 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112

(9th Cir. 2005)). It does not dispute, however, that antitrust discovery is complex and expensive, as many courts have acknowledged. *See e.g. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (noting that "antitrust discovery can be expensive"). Although I agree with CGI that defending a suit is not on its own prejudicial, I agree with Illumina that proceeding with the antitrust action now could force the parties to engage in expensive, time-consuming, and potentially pointless antitrust discovery.

CGI argues that discovery in this case could be simplified by reusing some information that CGI believes Illumina produced to the FTC as part of a second request in 2019. Opp. at 10-11. Illumina disputes that the FTC second request has any bearing on this action. It notes that the production was made to the FTC nearly two years ago and would have to be updated and supplemented even without a stay. Reply at 10. But regardless of whether Illumina's past production to the FTC might create some efficiencies in this action, it is likely that antitrust discovery will still be complex and expensive for the parties. It is unlikely that any past production to the FTC would encompass all of the materials CGI might request in this case. Further, any prior productions would not cover the depositions or expert discovery that will likely take place if the antitrust action proceeds. The significant costs associated with this discovery may be completely unnecessary if Illumina prevails in the Infringement Action. Proceeding with antitrust discovery now is likely to place a significant burden on the parties and, given the possible narrowing or mooting of this action, could waste significant party resources.

### III. PREJUDICE TO CGI IS CASE IS STAYED

Illumina argues that a stay would not prejudice CGI because (1) the viability of its claims are dependent on the outcome of the Infringement Action; (2) a stay would prevent CGI from incurring unnecessary litigation costs; and (3) CGI's inability to sell CoolMPS on the U.S. market is the result of the preliminary injunction in the Infringement Action, which was fully litigated by the parties and will either be converted into a permanent injunction or lifted once the Infringement Action is fully resolved on the merits. Mot. at 11-12. CGI disputes this and argues that a stay would prejudice CGI and consumers because (1) it would delay trial in this case and CGI's requested damages and forward-looking, permanent injunctive relief; (2) CGI has a strong *Walker*

1    *Process* claim; and (3) a stay may result in the loss of evidence. After reviewing the parties'
2    arguments, I find that a stay would not cause substantial prejudice to CGI.

3         A stay is not likely to prolong Illumina's allegedly anticompetitive conduct, the primary
4    reason CGI claims that a stay would cause it prejudice. CGI argues that "every day that trial in
5    this case is delayed, competition suffers more than it should and would but for a stay." Opp. at 6.
6    This assertion is not supported by the relevant facts. To the extent competition is currently being
7    harmed, it is primarily the result of my preliminary injunction order in the Infringement Action. It
8    is this order that is prohibiting CGI from selling its CoolMPS technology in the United States and,
9    as CGI claims, depriving consumers "of a meaningful competitive alternative" to Illumina's
10   technology. *Id.*

11        If CGI prevails in the Infringement Action, the preliminary injunction order will be lifted,
12   ending the alleged ongoing harm to competition. And if Illumina prevails, the preliminary
13   injunction will likely be made permanent, and CGI's antitrust claims will likely be mooted as a
14   result. Although resolution of CGI's antitrust action could also result in ending the preliminary
15   injunction order, the Infringement Action is far more advanced than this action and will be
16   resolved first whether a stay is granted or not. Dispositive motions in the Infringement Action are
17   set to be heard in July and trial is set for November. In contrast, the initial case management
18   conference has not yet been held in this action and no case schedule is currently set. It could be
19   years, not months, before the antitrust action would be ready for trial absent a stay. Because
20   resolution of the Infringement Action is likely to either end the preliminary injunction order or
21   moot CGI's antitrust claims, a stay of the antitrust action is not likely to prolong any
22   anticompetitive conduct on Illumina's part.

23        CGI also argues that a stay would cause prejudice because it has a strong *Walker Process*
24   claim and because a stay could result in a loss of evidence over time. Neither argument is
25   convincing. CGI does not explain why the strength or weakness of its *Walker Process* claim is
26   relevant to prejudice; I conclude that it is not. Further, although the possible loss of evidence can
27   cause prejudice, *see e.g. Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
28   490 F.3d 718, 724 (9th Cir. 2007), CGI does not identify any specific evidence or testimony that is

likely to be lost due to a stay. Indeed, CGI notes that the parties have already completed discovery on Illumina's alleged fraud and the patent infringement issues and that discovery in this action could be "limited to antitrust issues only." Opp. at 10. The relevant evidence is therefore likely to primarily involve business records relevant to product sales, pricing, competition, and the relevant market; testimony from corporate persons most knowledgeable; and expert analysis and testimony. This type of discovery is less susceptible to deterioration or loss than discovery heavily reliant on unique fact witnesses. Further, given that the Infringement Action is set for trial in November of this year, the proposed stay may only last a few months, further reducing the likelihood of any loss of evidence. CGI has failed to demonstrate that a stay is likely to cause it meaningful prejudice due to the strength of its *Walker Process* claim or the possible loss of evidence.

For the reasons discussed above, I conclude that a stay of this action, pending resolution of the Infringement Action, would promote judicial economy, reduce potentially unnecessary litigation costs, and is not likely to cause meaningful harm or prejudice to CGI.

## CONCLUSION

For these reasons, Illumina's requested motion to stay is GRANTED pending resolution of the related Infringement Action. The case is hereby STAYED.

**IT IS SO ORDERED.**

Dated: March 30, 2021



William H. Orrick
United States District Judge